UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD LOPEZ,

Plaintiff,

-against-

ROBERT RAMOS

Defendant.

11-cv-07790 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Richard Lopez ("Plaintiff") commenced this action on November 1, 2011 against Robert Ramos ("Defendant"), alleging excessive force pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendant injured Plaintiff's shoulder while arresting him during proceedings at a courthouse in Yonkers, New York on May 20, 2011. Following the completion of discovery, this Court held a pre-trial conference on September 25, 2013, at which the Court set a trial date of December 2, 2013. Pending before the court is Plaintiff's Motion to Reopen Discovery for the limited purpose of conducting discovery related to Plaintiff's treatment with a new orthopedic surgeon, Dr. Christopher Keen, and a possible need for a second surgery. The Court adjourned the trial until after the Court decides the Motion to Reopen Discovery. For the following reasons, Plaintiff's motion is DENIED.

## Factual Background

On May 20, 2011, Plaintiff attended proceedings at a courtroom in Yonkers, New York where Defendant was a court officer. During the proceedings there was an altercation between Plaintiff and Defendant, the facts of which are in dispute, which ended with Defendant arresting

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

Plaintiff. Plaintiff alleges that Defendant used excessive force to effectuate the arrest by twisting Plaintiff's right arm behind his back and causing "a newly torn shoulder." Pl. Compl. ¶26. At the time of the altercation, Plaintiff had a pre-existing injury dating from an incident almost ten years prior when he was hit in the shoulder with a bat. Plaintiff had begun seeing a doctor for problems with his shoulder shortly before the incident and he had an MRI taken. A diagnostic report from March 12, 2011 states that Plaintiff had "chronic right shoulder pain" and the MRI revealed evidence of shoulder damage. Watkins Dec. Ex 1 RL000492 ("IMPRESSION: 1. EVIDENCE OF HOOK SHAPE ACROMION. 2. INTRASUBSTANCE TEAR OF THE SUPRASPINATUS TENDON MOST LIKELY DEGENERATIVE"). Plaintiff had another MRI taken on June 8, 2011, after the incident, which also indicated shoulder damage. Watkins Dec. Ex 2 RL000489 ("IMPRESSION: 1. AC JOINT DEGENERATIVE CHANGES. INTRASUBSTANCE TEAR OF THE SUPRASPINATUS TENDON. THESE CHANGES ARE CONSISTENT WITH TYPE 2 IMPINGEMENT. EVIDENCE OF HOOK SHAPED TYPE OF ACROMION.").

Plaintiff sought treatment for his right shoulder from his primary care provider, Michael Crimi,[1] in February 2011. Meier Dec. Ex. J RL 86-89. Plaintiff was referred to an orthopedic specialist by Mr. Crimi in March 2011, but he did not see an orthopedist until June 2011. Mr. Crimi also referred Plaintiff to physical therapy, which he first began on May 6, 2011. Shortly after the altercation on May 20, 2011, Plaintiff went to Westchester County Medical Center with pain in his right shoulder and left knee. The records from WCMC did not indicate any fractures or dislocation of the shoulder or any abnormality in his knee. Meier Dec. Ex. O RL000439.

[1] Mr. Crimi is a licensed physician's assistant. Meier Dec. Ex. L p. 8.

Plaintiff was again referred to an orthopedist and physical therapy after returning to his home in Florida after the incident. At that point, Plaintiff saw an orthopedist for the first time, Dr. James Ray, who performed surgery on Plaintiff's right shoulder on September 20, 2011. The surgery repaired a tear to the rotator cuff, a subacromial impingement, and a Superior Labrum Anterior-Posterior ("SLAP") lesion. Watkins Dec. Ex. 3; Meier Dec. Ex. Q. Plaintiff went to physical therapy following the surgery until February 2012 when he was deemed to have completed the physical therapy goals set out for him and was discharged. Meier Dec. Ex. M RL000214. Notes from an appointment with Mr. Crimi show that Plaintiff was "awaiting app[ointment] in follow up with Ortho for unresolved shoulder pain that is worsening" on August 20, 2012. Meier Dec. Ex J RL000021. However, Plaintiff did not see an orthopedist again until July 2013.

Plaintiff saw Dr. Christopher Keen for the first time on July 16, 2013. Dr. Keen's notes from that visit indicate that Plaintiff told Dr. Keen that he was in an altercation at a courthouse in 2011 and that he had previously undergone surgery on his shoulder. Dr. Keen wrote that "Patient could likely have a repeat recurrent tear and chronic impingement along with a.c. arthritis," and sent Plaintiff for an MRI. Watkins Dec. Ex. 4 p. 3. At the follow-up visit on August 2, 2013, Dr. Keen noted that if Plaintiff continued to be symptomatic, he "should consider doing a repeat arthroscopy however I [Dr. Keen] would like to try to get him better conservatively as am not certain this is a true rotator cuff tear seen on the MRI." *Id* at p. 5. Plaintiff then returned to Dr. Keen on September 27, 2013, where they discussed certain treatment options, including "continued observation, continued therapy, anti-inflammatories, and surgical options." *Id* at p. 7.

**Procedural History**

The parties submitted a case discovery plan and scheduling order that went into effect on April 12, 2012. Dock. No. 8. The initial discovery deadline was January 1, 2013. Following five amendments to the scheduling order, the deadline to complete discovery was extended until August 1, 2013. Dock. Nos. 9, 10, 12, 13, 14. The final scheduling order set the deadlines as follows: joinder of parties by May 25, 2012; amended pleadings by June 1, 2012; interrogatories by July 1, 2012; non-expert depositions by June 30, 2013; further interrogatories and expert interrogatories by June 1, 2013; requests to admit by June 1, 2013; expert reports by June 15, 2013; rebuttal expert reports by July 15, 2013; and expert depositions by August 1, 2013. Dock. Nos. 13, 14.

The parties appeared at a status conference before the Court on September 10, 2013 and at a settlement conference on September 25, 2013. As settlement was not reached, the Court set trial to begin on December 2, 2013. The Court also set a deadline of November 4, 2013 for motions in limine, proposed voir dire questions, and the joint pre-trial order.

On October 30, 2013, Plaintiff submitted a letter to the Court requesting that the trial be adjourned and seeking leave to file a motion to reopen discovery. The request was initiated because Plaintiff had seen a new orthopedic surgeon, Dr. Keen, who discussed the possibility of a second surgery on Plaintiff's shoulder with Plaintiff. Defense counsel opposes this motion. At a conference held on November 5, 2013, after both parties had submitted motions in limine, proposed voir dire questions, and a joint preliminary trial report, the Court granted Plaintiff leave to file a Motion to Reopen discovery.

**Discussion**

A district court has "broad discretion to direct and manage the pre-trial discovery process." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004). Rule 16 of the Federal Rules of Civil Procedure directs district courts to limit the time for parties to complete discovery in a scheduling order. Fed. R. Civ. P. 16(b)(3)(A). The scheduling order "shall not be modified except upon a showing of good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A party seeking relief from the discovery schedule, including the reopening of discovery when discovery has closed, must make an application to the Court demonstrating why good cause exists to modify the schedule." *McKay v. Triborough Bridge and Tunnel Auth.*, No. 05 Civ. 8936(RJS), 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007).

"A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). The moving party must show that even if it had exercised diligence, it could not have met the deadline set by the court. *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749(KMW)(DF), 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009); *Wade v. North American Asset Servs., LLC*, No. 12–CV–1111 (ARR), 2013 WL 593470, at *2 (E.D.N.Y. Feb. 14, 2013) ("In determining whether a party has been diligent in seeking the requested discovery, courts consider what information 'the party knew, or should have known,' in advance of the deadline sought to be extended." (quoting *Sokol Holdings*, 2009 WL 2524611, at *8)).

Although "the primary consideration is whether the moving party can demonstrate diligence," *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007), other factors that courts in this Circuit have considered in determining whether to modify a scheduling order by reopening discovery include "(1) the imminence of trial; (2) whether the request is

opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." *Jeannite v. City of N.Y. Dep't of Buildings*, No. 09 Civ. 3464(DAB)(KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010); *see also Kirkland v. Cablevision Sys.*, No. 09 Civ. 10235(LAP)(KNF), 2012 WL 4336193, at *2 (S.D.N.Y. Sept. 21, 2012).

Plaintiff requests that discovery be reopened based on Dr. Keen's determination that Plaintiff might need a second surgery on the shoulder that was allegedly injured by Defendant on May 20, 2011. Plaintiff argues that if he does require a second surgery and if he can establish a causal connection between the May 20, 2011 incident and his shoulder injury, he may have increased damages, and therefore, good cause exists to reopen discovery.

Plaintiff has been seeking medical attention for his shoulder injury since early 2011 and has continued to do so throughout the pendency of this action. Plaintiff initiated this action based upon his injured shoulder and therefore he knew, or should have known, that the consequences of further injury or treatment to that shoulder could affect this litigation. The record indicates that Plaintiff was still experiencing pain in his shoulder after his surgery. At that point, it was incumbent upon him, knowing that there were discovery deadlines and a pending trial in this action, to seek further medical advice to determine the full extent of the injury. It is clear that Plaintiff's shoulder was still bothering him in September 2012, but he did not seek treatment until July 2013. Not only must counsel be diligent, the litigant must be diligent as well. Plaintiffs, as initiators of lawsuits, must be held accountable for their actions just as litigants can be held to the actions of their counsel. *See, e.g., Link v. Wabash R. Co.*, 370 U.S.

626, 633–34 (1962); *Johnson v. McBride*, 381 F.3d 587, 589–90 (7th Cir. 2004) ("[L]awyers are agents. Their acts (good and bad) are attributed to the clients they represent."). Plaintiff's counsel may not rely on Plaintiff's lack of diligence to argue that he needs more time to conduct discovery. At the very least, diligence required Plaintiff to consult with his counsel regarding the possible consequences of follow-up treatment for his continuing injury.

Even accepting Plaintiff's argument that it took almost nine months to get a referral and appointment with Dr. Keen, he was still within the discovery period when he first saw Dr. Keen in July 2013, and Plaintiff could have informed his counsel that he saw a new orthopedist. If Plaintiff had informed Defendant at that point, Defendant could have responded accordingly and conducted further discovery within the discovery deadline or requested an extension before the deadline expired. Plaintiff argues that even if Dr. Keen had been identified before August 2013, it would have been necessary to continue discovery through at least December 2013, but that does not excuse Plaintiff's failure to disclose a new potential witness in a trial that was less than three months away. Indeed, Plaintiff responded to interrogatories on July 19, 2013, three days after Plaintiff's first visit to Dr. Keen, affirmatively stating that he had already disclosed all of his medical providers. In responding to this interrogatory, Plaintiff's counsel should have inquired of Plaintiff if he had seen any other doctor, which might have revealed the existence of a new potential witness. Plaintiff's counsel, therefore may not use the excuse that he was unaware that Plainitff saw a new doctor. Pl. Mem in Supp. 2 (stating that Plaintiff did not inform his counsel of the new developments until early October). Whether this was inadvertent or deliberate is immaterial. It is understandable that a medical provider would propose a conservative course of action before ultimately recommending surgery, but it is inexplicable why Plaintiff failed to disclose the existence of Dr. Keen to his counsel until almost three months

after his first visit. The Court further acknowledges that deciding to undergo surgery requires contemplation, but where a Plaintiff who has brought a lawsuit due to an injured shoulder declines to seek further examination by an orthopedist of continuing pain in that shoulder until almost two years after the initial surgery and then does not disclose that fact to his counsel, his actions may not be described as diligent.

Turning to the other factors that courts consider when deciding whether to modify a scheduling order and reopen discovery, they too favor denying the motion to reopen discovery. Most significantly, trial in this case was imminent. In fact, the parties had both submitted motions in limine, a joint pre-trial order, and proposed voir dire questions. Where a request to reopen discovery is made on the eve of trial, this factor weighs against granting the request to reopen discovery. This is especially the case where the Plaintiff could have foreseen the need for additional discovery in light of the discovery deadline set by the court if he had communicated with his counsel and exercised diligence. Regular communication between Plaintiff and his counsel should have signaled to Plaintiff that any additional shoulder issues that may be linked to the incident for which he brought this lawsuit should have been addressed before the discovery deadline expired. The record indicates that Plaintiff was still experiencing pain in his shoulder in August 2012. While in other circumstances, waiting almost nine months to see an orthopedist for a continuing injury is not remarkable, where there is a pending lawsuit, Plaintiff must be aware that his actions with regard to his injury have an affect on the course of the litigation.

Further, the motion to reopen discovery is vehemently opposed by Defendant in this case, also weighing against reopening discovery. Defendant will incur further expense by the reopening of discovery, specifically in the additional depositions of Dr. Keen and Plaintiff. One

expense particularly, that of Defendant's expert reviewing Dr. Keen's records, potentially could have been avoided through earlier identification of Dr. Keen. *Kassim v. City of Schenectady*, 221 F.R.D. 363, 367 (N.D.N.Y. 2003) ("The disruption caused by the proliferation of untimely expert testimony is real and attorneys must know such will not be permitted." (internal citation omitted)).

Finally, as to whether reopening discovery will lead to relevant evidence, it is unclear from the record before the Court what Dr. Keen will add to the already developed record through the reopening of discovery. Plaintiff proffers Dr. Keen for the limited purpose of conducting discovery regarding Plaintiff's "treatment with Dr. Keen, and his need for a possible second shoulder surgery." *Id* at 5. Similarly, it is unclear what information Plaintiff provided Dr. Keen regarding Plaintiff's previous injury and treatment prior to the courtroom incident, or Dr. Keen's opinion as to a link between the injury and the May 20, 2011 incident. The discovery to be adduced by Dr. Keen is indeterminate at this time, as Plaintiff admits. It is not clear that Dr. Keen will say conclusively that Plaintiff requires further surgery, or that his opinion will be that there was a link between Plaintiff's injury and the courtroom incident. To reopen discovery at such a late stage for such a speculative purpose will serve only to prolong this litigation unnecessarily. *See Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011) (motion to reopen discovery denied where defendants were seeking additional expert discovery to interpret documents that had been in defendants' possession before end of fact discovery and in order to rebut a defense that was known at the outset of the action).

## Conclusion

Because Plaintiff has not shown good cause for modifying the scheduling order, Plaintiff's motion to reopen discovery is DENIED. The Clerk of the Court is directed to terminate this motion. (Doc. 30).

Dated: Dec 30, 2013

White Plains, New York

SO ORDERED:

12/30/13

NELSON S. ROMÁN
United States District Judge